1  Law Offices of George S. Burns
   George S. Burns (Bar No. 124507)
2  4100 MacArthur Boulevard, Suite 305
   Newport Beach, CA 92660
3  Telephone: (949) 263-6777
   Facsimile:  (949) 263-6780
4
   Attorneys for Plaintiff
5  Advanced Materials Group, Inc., a Nevada corporation

6

7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

11 | Advanced Materials Group, Inc., a     ) CASE NO.  SACV 08-43 JVS
   | Nevada corporation                    ) (RNBx)
12 |                                        )
   |                                        ) Assigned for all purposes to
13 |                                        ) Honorable James Selna
   |                         Plaintiff,     )
14 |                                        )
   | vs.                                    ) **PART II TRIAL TESTIMONY OF**
15 |                                        ) **STEVE SCOTT EXHIBITS 3 - 7**
16 | Foamtec (Singapore) Pte. Ltd., a      ) Date:   March 16, 2009
   | private limited company incorporated  ) Time:   8:30 a.m.
17 | in Singapore; Foamex Asia Ltd., a     ) Dept.:  11:00 a.m.
   | private limited company incorporated  )
18 | in the Kingdom of Thailand and        )
   | DOES 1 through 10, inclusive          )
19 |                                        )
   |                         Defendants.    ) Complaint Filed: December 11,
20 | _____) 2007
21 |                                          Trial Date: March 31, 2009
22
23
24
25
26
27
28

Exhibit "3"

DC&M Draft: 1/28/98

EXHIBIT B

## TECHNICAL INFORMATION LICENSE AGREEMENT

This TECHNICAL INFORMATION LICENSE AGREEMENT is effective this 30Vth day of January, 1998, ("Agreement") by and between Advanced Materials Foreign Sales Corporation Ltd., a Bermuda corporation ("AMFS") and Foamtec (Singapore) Pte. Ltd., a Singapore private limited company ("Foamtec"), either or both of which may also hereinafter be referred to respectively as the "Party" or "Parties" to this Agreement.

WHEREAS this Agreement is an attachment to a Manufacturing Agreement between the Parties of even date herewith (the "Manufacturing Agreement");

WHEREAS Foamtec is entering a joint venture with AMFS and requires a license of certain technology in support of Foamtec's obligations thereunder; and

WHEREAS AMFS represents that it is the owner of certain technology that (a) is used in connection with the business of the Joint Venture that AMFS is forming with Foamtec and (b) is also otherwise used by AMFS (hereinafter "Shared Use Technology");

NOW, THEREFORE, in consideration of the promises and the mutual covenants of this Agreement, the parties hereto agree as follows:

ARTICLE I.  DEFINITIONS

1.1    The term "Products" and other capitalized terms not otherwise defined in this Agreement shall have the meaning ascribed to them in the Manufacturing Agreement.

1.2    The term "Technical Information", as used herein, means all information and assistance (including, but not limited to, data, know-how, technical, manufacturing, marketing information, designs, drawings, specifications, bills of materials, and documentation of processes) which pertains to the Shared Use Technology identified in Schedule A to this Agreement. AMFS and Foamtec acknowledge that until November 1990, Mr. Steve Scibelli, the President of Foamtex Asia Co., Ltd., an Affiliate (as defined in the Manufacturing Agreement) of Foamtec, was the principal owner of Advanced Materials, Inc., an Affiliate of AMFS and, as a result thereof, Foamtec has prior knowledge of specific fabrication techniques used up until November 1990 to make finished foam products for Hewlett-Packard, although the parties also acknowledge that the process used in the Shared Use Technology for Hewlett-Packard was developed subsequent to November, 1991.

ARTICLE II.  Licenses Granted

2.1    AMFS grants and agrees to grant to Foamtec an irrevocable, fully paid-up perpetual, non-exclusive, non-transferable license to make the Products in Singapore as

Exhibit 4 to Mortensen Decl.
Page 1 of 6

FM 0065

contemplated in the Manufacturing Agreement using all applicable Technical Information.

2.2    No license, either express or implied, is granted by AMFS to Foamtec hereunder with respect to any patent or information or other intellectual property except as specifically stated above.

2.3    No license, either express or implied, is granted hereunder to use as a trademark or otherwise the trademarks "Advanced Materials" or any other trademark or trade or product name of AMFS, or any word or mark similar thereto.

2.4    Nothing contained in this Agreement shall constitute, or be construed to be, a limitation or restriction on either Foamtec or AMFS to use existing technologies for future businesses.

2.5    Nothing contained in this Agreement shall constitute, or be construed to be, to require AMFS to license Foamtec to use AMFS patents or technology for other than the Products.

2.6    Nothing contained in this Agreement shall constitute, or be construed to be, a limitation or restriction upon any right otherwise possessed by Foamtec or AMFS to make, use or sell any product, or parts therefor, in any country, except as otherwise provided in the Manufacturing Agreement.

2.7    AMFS agrees that no fees shall be charged for the license granted hereunder.

## ARTICLE III.  Enforcement of Intellectual Property Rights

3.1    AMFS shall at all times have the sole right to take whatever steps it deems necessary or desirable to enforce its rights in the licensed Technical Information, including the filing and prosecution of litigation; and AMFS shall have the right to include Foamtec as a party in such litigation where necessary for the conduct thereof.  If AMFS and Foamtec desires to agree to joint participation in any suit or other enforcement action with respect to any of the Technical Information, the respective responsibilities of the parties, and their contributions to the costs and participation in any recoveries, will be agreed upon in writing prior to undertaking such joint enforcement action.

3.2    AMFS does not make any representation to Foamtec regarding the scope or enforceability of the Technical Information, and does not warrant that any Products manufactured or sold under this Agreement will not infringe patents of others.

3.3    In the event of any actual or threatened infringement suit against Foamtec or its customers which would affect the manufacture, use or sale of Products, Foamtec shall promptly give written notice thereof to AMFS, and AMFS will make available to Foamtec free of charge any information in its possession which AMFS believes will assist Foamtec in defending or otherwise dealing with such suit.

## ARTICLE IV.  Technical Information

Exhibit 4 to Mortensen Decl.
Page 2 of 6

4.1    Foamtec shall be entitled to receive only the data, know-how and assistance as set forth in Schedule A.

4.2    If approval by any government is required in order to render this Agreement fully effective, AMFS shall not be obligated to furnish any information or assistance hereunder until such approval has been obtained and evidence thereof has been supplied to AMFS.

4.3    All Technical Information covered by this Agreement is property of AMFS and shall be maintain in confidence by Foamtec.

4.4    Foamtec agrees that it will not at any time knowingly disclose to any third party (except to its employees who reasonably require such information in connection with the performance of their regular duties) any Technical Information which is communicated to Foamtec by AMFS under this Agreement. The foregoing obligation of confidentiality shall not apply to any Technical Information that (a) is or may become generally available to the general public through no act of the receiving party or any of its employees; (b) Foamtec can demonstrate by means of prior documentation was in its unrestricted possession at the time such Technical Information was first communicated to Foamtec by AMFS; or (c) Foamtec received such information from a third party independent of AMFS and such third party having a bona fide right to disclose such information to Foamtec without any obligation of confidentiality.

## ARTICLE V. Miscellaneous Provisions

5.1    <u>Waiver</u>:  Failure of either party to insist upon the strict performance of any provisions hereof or to exercise any right or remedy shall not be deemed a waiver of any right or remedy with respect to any existing or subsequent breach or default; the election by either party of any particular right or remedy shall not be deemed to exclude any other; and all rights and remedies of either party shall be cumulative.

5.2    <u>Notice</u>:  Any notice required or permitted hereunder shall be in writing and shall be sufficiently given when mailed postpaid first class registered or certified mail and addressed to the party for whom it is intended at its record address, or when sent by facsimile, and such notice shall be effective as of the date it is deposited in the mail or when a facsimile notice of receipt is received. The record address of AMFS for this purpose is its address set forth in the preamble and the record address of Foamtec is its address set forth in the preamble of this Agreement. Either party may, at any time substitute for its previous record address any other address by giving written notice of the substitution.

5.3    <u>Government Approvals</u>:  Foamtec shall, at its own expense, take whatever steps are required to satisfy the laws and requirements of the respective countries within respect to declaring, recording and otherwise rendering this Agreement valid.

5.4    <u>Severability</u>:  If any section or provision of this Agreement in any way contravene

3

Exhibit 4 to Mortensen Decl.
Page 3 of 6



a law of any state or country in which this Agreement is effective, the remaining section of this Agreement shall not be affected thereby and this Agreement shall be modified to conform with such law. Notwithstanding the foregoing, in the event of any such contravention AMFS may at its option terminate this Agreement forthwith by giving to Foamtec written notice of termination.

5.5     Arbitration: In the event of any dispute arising out of the terms of this agreement the parties shall attempt to reach an amicable settlement. Failing such settlement the dispute shall be settled by arbitration in accordance with the Rules of the Singapore International Arbitration Centre in effect at the time of arbitration, by one or more arbitrators designated in conformity with these rules, the awards being formal and binding. The place of the arbitration shall be Los Angeles, California. The arbitration shall be conducted in the English language.

5.6     Governing Law: This Agreement shall be interpreted and construed in accordance with the laws of the State of California except as governed by the trade secret laws of the United States of America.

5.7     Force Majeure: Neither Party shall be in default under this Agreement for any delay or failure to perform hereunder due to causes beyond its control and without its fault or negligence, including but not limited to acts of nature, acts of any government in its sovereign or contractual capacity, strikes, fires, floods, riots or embargoes; provided, however, that prompt written notice is given to the other Party describing such cause.

5.8     Export. Foamtec agrees to reasonably cooperate with AMFS to enable AMFS to comply with all applicable export regulations and secure all required export approvals prior to disclosure of any technology conveyed under this license to a non US person either inside or outside the United States of America or prior to the export or sale of a product of the technology conveyed under this license to a non US person either inside or outside the United States of America.

5.9     Entire Agreement: This Agreement contains all of the terms and conditions agreed upon by AMFS and Foamtec regarding the specific subject matter hereof, and this Agreement may be modified only by an instrument in writing executed on behalf of AMFS and Foamtec by their respective duly authorized representatives.

Foamtec and AMFS have caused this Agreement to be executed, in duplicate, by their respective duly authorized representatives on the dates and at the places indicated below.

ADVANCED MATERIALS FOREIGN          FOAMTEC (SINGAPORE) PTE.
SALES CORPORATION LTD.

By _____              By _____

Typed  STEVE  SCOTT                 Typed  STEPHEN  SCISELLI

Title  PRESIDENT                    Title  PRESIDENT

Exhibit 4 to Mortensen Decl.
Page 4 of 6

FM 0068

Date _30 January 1998_          Date _____

Schedule A: Shared Use Technology

0300Z\0020\license4.agt

Exhibit 4 to Mortensen Decl.
Page 5 of 6

5

FM 0069

SCHEDULE A

Shared Use Technology

Exhibit 4 to Mortensen Decl.
Page 6 of 6

51

Exhibit "4"

11. JUL. 2000  9:08   310 FOAMEX ASIA 66 2 6796107   ADVANCED MTLS   +++ SCIBELLI   NO.930   @001/001
TO:FOAMTEC  08:52   310 766 6669      ADVANCED MTLS                              NO.923   P.2

# Foamex Asia Co.,Ltd.

Head Office: 175 Sathorn City Tower, 20th Floor, South Sathorn Road, Thungmahamek,
Sathorn, Bangkok 10120 Thailand Tel. (662) 679-6106 Fax (662) 679-6107
Factory: 51/2 Bangna-Trad Rd. Km.27, Sukhjowkhey-yai, Bangsaothong, Samutprakan
10540 Thailand Tel. (662) 740-0762-5 Fax. (662) 740-0762

3rd July 2000

To: Steve Scott
    President/CEO
    Advanced Materials Group, Inc.

From: Stephen P. Scibelli Jr.
    President
    Foamex Asia Co., Ltd.

### JOINT-VENTURE AGREEMENT

To protect its interests as a holding company in the various agreements signed with its partners, material contracts [concerning joint ventures, trademarks, copyrights and royalties] have to be restructured with Foamex Asia Co., Ltd. (FACL) as the principal respondent party.

AMFS's agreement with Foamtec (Singapore) Private Limited (FSPL) is affected by this change.

The move will involve AMFS endorsing a declaration of assignment of the existing agreement to FACL whereby FSPL, being wholly owned and managed by us, shall continue to honor all legal obligations required.

When implemented, the flow of work will continue as before except that AMFS must address and send their invoices to FACL, which will in turn invoice FSPL. Shipments, with advance shipping notification, shall continue to go directly to Singapore. Singapore will maintain production, liaison with AMFS and IIP, and carry out deliveries and sales billings to AMFS. FACL will coordinate and submit netting accounts to AMFS as before.

I hope you will understand our rationale for this and look forward to receive your acknowledgment.

Best regards,

*Stephen P. Scibelli Jr.*
Stephen P. Scibelli Jr.
President

### DECLARATION OF ASSIGNMENT

By the authority vested in me as President and Chief Executive Officer of Advanced Materials Foreign Sales (AMFS), I, Steve F. Scott, hereby agree to the assignment of the Agreement, dated 8th January 1998, signed between our AMFS and Foamtec (Singapore) Pte. Ltd. (FSPL), to its 100% equity owner, Foamex Asia Co., Ltd. (FACL), a company incorporated in the Kingdom of Thailand, effective 1st July 2000.

I do this in good faith and in the belief that all facts given to me are true and correct, and that Assignee, FACL, shall without interruption continue to observe and honor all the covenants of the original agreement.

*Steve F. Scott*
Steve F. Scott
President/CEO

| Post-It® Fax Note | 7671 | Date | | |
|---|---|---|---|---|
| To MR. FOONG | | From FAT | | |
| Co./Dept. FOAMTEC (S) | | Co. FOAMEX (THAILAND) | | |
| Phone # | | Phone # | | |
| Fax # | | Fax # | | |

Exhibit 5 to Mortensen Decl.
Page 1 of 2

Exhibit "5"

## VARIATION TO MANUFACTURING AGREEMENT

FIRST EXECUTED ON JANUARY 08, 1998

VARIATION TO ARTICLE 3, CLAUSE 3.1

By the authority vested in the parties to this Agreement signing hereunder, it is agreed that the Profit-Sharing Schedule shall be varied to accommodate the change from Year 4 onward:-

| Year | AMFS | Foamtec/Foamex Asia* |
|------|------|----------------------|
| 1 | 65 | 35 |
| 2 | 60 | 40 |
| 3 | 50 | 50 |
| 4 | 50 | 50 |
| 5 | 45 | 55 |
| 6 | 40 | 60 |
| 7-10 | 35 | 65 |

*  all rights and obligations of Foamtec (Singapore) Pte. Ltd., under the original Agreement, have been duly assigned to its holding company, Foamex Asia Co. Ltd., by mutual consent in writing, effective July 01, 2000.

Except for the aforementioned, other terms and conditions of the Agreement shall remain unchanged.

ADVANCE MATERIALS FOREIGN          FOAMEX ASIA CO. LTD.
SALES CORPORATION LTD.

By _____          By: _____
Name: STEVE F. SCOTT                  Name: STEPHEN P. SCIBELLI JR.
Title:        PRESIDENT               Title:        PRESIDENT

Dated this day, May 01, 2001.

Exhibit 6 to Mortensen Decl.
Page 1 of 1

Exhibit "6"

AMG-ADD

# ADDENDUM TO MANUFACTURING AGREEMENT

This Addendum to Manufacturing Agreement (this "Addendum") is entered into as of June 19, 2003, by and between Advanced Materials Group, Inc., a Nevada corporation ("AMG"), and Foamex Asia Co. Ltd., a private limited company incorporated in the Kingdom of Thailand ("Foamex").

## RECITALS

A.    On or about January 30, 1998, Advanced Materials Foreign Sales Corporation Ltd., a Bermuda corporation ("AMFS") and Foamtec (Singapore) Pte. Ltd., a private limited company incorporated in the Republic of Singapore, a wholly owned subsidiary of Foamex ("Foamtec") entered into that certain Manufacturing Agreement dated as of January 30, 1998 (the "Manufacturing Agreement") as well as that certain Advanced Materials Foreign Sales Corporation Limited Equipment Lease dated as of January 30, 1998 (the "Equipment Lease") and that certain Technical Information License Agreement dated as of January 30, 1998 (the "License Agreement").

B.    On or about May 1, 2001, AMFS and Foamex entered into that certain Variation to Manufacturing Agreement (the "May 1, 2001 Amendment"), modifying the percentage profit-sharing schedule set forth in section 3.1 of the Manufacturing Agreement. This Addendum, together with the Manufacturing Agreement, the May 1, 2001 Amendment, the Equipment Lease, the License Agreement, and the exhibits and attachments to the Manufacturing Agreement and the License Agreement are all collectively referred to herein as this "Business Agreement".

C.    AMG is the successor in interest to AMFS under the Manufacturing Agreement, under the Equipment Lease, and under the License Agreement, and Foamex is the successor in interest to Foamtec under the Manufacturing Agreement, under the Equipment Lease, and under the License Agreement; provided, however, that Foamex may conduct the Business or otherwise conduct operations under this Business Agreement, in whole or in part, through its wholly-owned subsidiary Foamtec.

D.    As a result of the joint venture Business established in connection with the Manufacturing Agreement, the business relationships of the parties hereto, and in particular that of Foamex, with Hewlett-Packard, for the distribution of Products to Hewlett-Packard, has been enhanced and solidified. Over the course of the performance of the terms of the Manufacturing Agreement, the parties have heretofore modified to some extent, and desire to further modify by this Addendum, the mechanics of distribution and financial relationships of the parties so as to effect further efficiencies in the operations hereunder. As a result of the changes heretofore effected and to be effected by this Addendum, AMG will relinquish substantially all of its direct involvement in and control over the distribution and billing activities of the Business in exchange for the right to receive a share of the profits of the Business for the term of the Manufacturing Agreement.

E.    The parties now desire, by the execution and delivery of this Addendum to Manufacturing Agreement, and by the recital contained in the paragraph C above, to confirm the

Exhibit 7 to Mortensen Decl.
Page 1 of 8

FM 0033

accession of AMG and Foamex as parties to the Manufacturing Agreement and related agreements, and to modify the Manufacturing Agreement as herein provided.

## AGREEMENT

14.  Section Numbering. For convenience of reference and the avoidance of confusion, Section numbering contained in this Addendum is numbered to follow consecutively the Section numbering contained in the Manufacturing Agreement.

15.  No Other Changes. Except as otherwise expressly provided herein, the Manufacturing Agreement, as amended by the May 1, 2001 Amendment, the License Agreement, and all of the terms and conditions contained in both the Manufacturing Agreement and the License Agreement, remain in full force and effect. Except as expressly modified herein, terms which are defined in the Manufacturing Agreement and the License Agreement shall have the same meanings when used in this Addendum.

16.  Modification of Manufacturing Agreement. The following Sections of the Manufacturing Agreement are hereby amended, effective as of the Addendum Effective Date, as follows:

16.1  Section 2.1 of the Manufacturing Agreement is amended to read as follows:

2.1.  Purposes. The purposes for which this Agreement were originally entered into were for AMFS to acquire raw materials from Foamex USA, and to sell such raw materials to Foamtec, and for Foamtec to fabricate such raw foam products at Foamtec's facility in Singapore, utilizing machinery and technology supplied by AMFS, for resale of finished foam products to AMFS, which will then sell such products to Hewlett-Packard, and to certain other approved customers and products, such products and such customers to be approved unanimously by the Parties from time to time on a case-by-case basis.

Following the Addendum Effective Date, subject to the provisions of Section 3.2(d) of the Manufacturing Agreement, the purposes for which this Business Agreement is entered into (the "Business") shall be to manufacture and sell to Hewlett-Packard Company, a Delaware corporation, including its Affiliates and its successors and assigns (collectively, "Hewlett-Packard"), finished foam products (the "Products"), with all manufacturing, sales, delivery, billing, and collection of and for the Products to be effected by Foamex as agent for the Business.

16.2  Section 2.3 of the Manufacturing Agreement is amended to read as follows:

2.3.  Conduct. On behalf of the Business, Foamex shall manufacture, sell and deliver to Hewlett-Packard the Products, and shall bill and collect from Hewlett-Packard for such sales. Foamex shall use its reasonable best efforts to procure raw materials, manufacture the Products, utilize shipment and delivery practices, establish pricing for the Products, and

2

Exhibit 7 to Mortensen Decl.
Page 2 of 8

FM 0034

otherwise conduct its operations hereunder in a manner designed to maximize the profits to the Parties for the term of the Manufacturing Agreement.

16.3    The introductory paragraph, preceding the table in Section 3.1 of the Manufacturing Agreement is amended to read as follows:

3.1.    Profit Sharing.  Except as otherwise expressly stipulated herein, the interest of the respective Parties in the profits of the Business shall be as follows:

(The table setting forth profit-sharing percentages, as amended by the May 1, 2001 Amendment, shall remain unchanged, except to substitute AMG in place of AMFS and Foamex in place of Foamtec.)

16.4    The introductory paragraph of Section 3.2 of the Manufacturing Agreement is amended to read as follows:

3.2.    Calculation of Profits.  Profits are to be determined by deducting all costs arising under the Agreement from the revenues arising under the Agreement, all as determined on the accrual basis of accounting as determined under generally accepted accounting principles.

16.5    Subdivision (a) of Section 3.2 of the Manufacturing Agreement is amended to read as follows:

(a)    Revenues.  Payments due from Hewlett-Packard  for accrued sales of the Products to Hewlett-Packard.

16.6    Subdivision (c) of Section 3.2 of the Manufacturing Agreement is amended to substitute Foamex in place of AMFS wherever referenced therein, so as to reflect the substitution of Foamex responsibilities in place of those of AMG (AMFS) for the acquisition of materials and other manufacturing and distribution activities hereunder.

16.7    A new Subdivision (d) of Section 3.2 of the Manufacturing Agreement is hereby added to read as follows:

(d)    MFN Costs.  All materials, including foam, acquired for the Business from Foamex or from any Affiliate of Foamex shall be charged at the lowest price charged by Foamex or its Affiliates to any third party buyer.

16.8    Section 3.3 of the Manufacturing Agreement is deleted in its entirety.

16.9    Section 3.4 of the Manufacturing Agreement is amended to read as follows:

3.4    Time of Payments.  Payments by Foamex to AMG for AMG's percentage share of the profits as calculated under Sections 3.1 and 3.2 shall be made on a monthly basis within 60 ( sixty) business days after the

3

Exhibit 7 to Mortensen Decl.
Page 3 of 8

FM 0035

close of each calendar month, together with Foamex' detail of the revenues and costs used to calculate the Profits under Section 3.2 above. Payments by Foamex to AMG shall be subject to any withholding taxes or other deductions required by law (which shall be paid promptly and as required by law to the appropriate taxing authorities for the account of AMG, with full accounting therefor to AMG) and to set off for any liquidated sums due from AMFS or AMG to Foamex or Foamtec, including any debts going prior to the effective date of this Addendum.

16.10   The addresses for notice under Section 12.1 of the Manufacturing Agreement are amended to read as follows:

If to AMG, to:

Mr. Steve Scott, President
Advanced Materials Group, Inc.
20211 South Susana Road
Rancho Dominguez, CA 90221
facsimile:              (310) 763-6869
confirming no:          (310) 537-5444

with a copy to:

Ed Sybesma, Esq.
Rutan & Tucker, LLP
611 Anton Boulevard
Suite 1400
Costa Mesa, CA 92626
facsimile:              (714) 546-9035
confirming no:          (714) 641-3427

If to Foamex, to:

Mr. Steve Scibelli, President
Foamex Asia Co., Ltd.
175 Sathorn City Tower
22nd Floor
South Sathorn Road
Sathorn, Bangkok 10120
Thailand
facsimile:              66 (662) 679-6107
confirming no:          66 (662) 679-6106

4

Exhibit 7 to Mortensen Decl.
Page 4 of 8

FM 0036

with a copy to:

Mr. Steve Scibelli, President
Foamtec (Singapore) Pte. Ltd.
6, Sungei Kadut Crescent
Singapore 728689
facsimile:          (65) 6368 1831
confirming no:    (65) 6368 2898

17.    **Additional Provisions.**

17.1    AMG hereby guarantees to Foamex payment and performance of all obligations, if any, of AMFS under the Manufacturing Agreement.

17.2    Foamex hereby guarantees to AMG payment and performance of all obligations, if any, of Foamtec under the Manufacturing Agreement.

17.3    Representations and Warranties by AMG. AMG represents and warrants to, and covenants with Foamex, as follows:

(a)    AMG is a corporation duly organized and validly existing under the laws of the State of Nevada and is in good standing in such jurisdiction. AMG is qualified to do business and in good standing as a foreign corporation in the State of California and in any other jurisdiction where the failure to be so qualified or in good standing would have a material adverse impact on the operations or financial condition of the Business.

(b)    AMG has the full right, power and authority to enter into this Addendum and this Business Agreement and will at all times have the full power and authority to perform its obligations under the Business Agreement. The Business Agreement has been duly authorized, executed and delivered by it, and this Business Agreement constitutes its valid and binding obligation, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting creditors' rights generally, or equitable principles, whether applied in a proceeding in equity or law.

(c)    AMG is not, nor at any time will it be, a party to any contract or other arrangement of any nature that will materially interfere with its full, due and complete performance of this Business Agreement.

(d)    There is no litigation or proceeding pending or, to the best of AMG's knowledge and belief, is any investigation pending or litigation, proceeding, or investigation threatened involving AMG, which could, if adversely determined, materially and adversely affect the operations or financial condition of the Business or the performance of AMG's obligations under this Business Agreement.

5

Exhibit 7 to Mortensen Decl.
Page 5 of 8

FM 0037

     (e)    AMG is not, nor at any time will it be, in violation of any existing law, be it state or federal, by entering into an undertaking the performance of this Business Agreement.

17.4    Representations and Warranties by Foamex.  Foamex represents and warrants to, and covenants with AMG, as follows:

     (a)    Foamex is a private limited company duly organized and validly existing under the laws of the Kingdom of Thailand and is in good standing in such jurisdiction.  Foamex is qualified to do business and in good standing as a foreign corporation in any other jurisdiction where the failure to be so qualified or in good standing would have a material adverse impact on the operations or financial condition of the Business.

     (b)    Foamex has the full right, power and authority to enter into the Business Agreement and will at all times have the full power and authority to perform its obligations under the Business Agreement.  The Business Agreement has been duly authorized, executed and delivered by it, and this Business Agreement constitutes its valid and binding obligation, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting creditors' rights generally, or equitable principles, whether applied in a proceeding in equity or law.

     (c)    Foamex is not, nor at any time will it be, a party to any contract or other arrangement of any nature that will materially interfere with its full, due and complete performance of this Business Agreement.

     (d)    There is no litigation or proceeding pending or, to the best of Foamex's knowledge and belief, is any investigation pending or litigation, proceeding, or investigation threatened involving Foamex, which could, if adversely determined, materially and adversely affect the operations or financial condition of the Business or the performance of Foamex's obligations under this Business Agreement.

     (e)    Foamex is not, nor at any time will it be, in violation of any existing law, be it state, federal, or national, by entering into an undertaking the performance of this Business Agreement.

18.    __Term and Effectiveness__.  This Addendum shall be effective (the "Addendum Effective Date") commencing June 23, 2003.

19.    __Entire Agreement__.  The Business Agreement constitutes the entire agreement between the parties hereto concerning the subject matter thereof, and supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether oral or written, of the Parties, and there are no warranties, representations or agreements among the parties except as set forth in the Business Agreement.  No amendment, supplement, modification, waiver, or termination of the Business Agreement, or any provision hereof, shall be binding unless executed in writing by the party against whom any of the foregoing is sought to be enforced.  No waiver of any provision of the Business Agreement shall constitute a waiver

6

Exhibit 7 to Mortensen Decl.
Page 6 of 8

FM 0038

of any other provision (whether similar or not), nor shall any waiver constitute a continuing waiver unless otherwise expressly provided hereunder or in writing signed by the party against whom any such waiver is sought to be enforced.

20.    Counterparts.  This Addendum may be executed in counterparts, and each executed counterpart shall be deemed to be a duplicate original of this Addendum.

21.    Headings.  The captions and headings contained in this Addendum are for convenience only and shall not affect the construction or interpretation of any provisions of this Addendum.

22.    Applicable Law.  The obligations, rights, duties, powers and remedies under this Addendum and of the parties hereto shall be governed and construed by the laws of the State of California.  If any legal action is necessary to enforce the terms and conditions of the Business Agreement, the parties hereby agree that the Superior Court of California, County of Orange, or, if applicable, federal District Court sitting in the County of Orange, State of California, shall be the sole venue and jurisdiction for the bringing of such action.

23.    Reformation and Severability of Provisions.  If any provision of this Addendum is found illegal, invalid or unenforceable pursuant to judicial or tribunal decree or decision, then such provision shall be deemed automatically adjusted to the minimum extent necessary to conform to the requirements for legality, validity and enforceability, as declared at such time and, as so adjusted, shall be deemed a provision of this Addendum as though originally included herein, and the remainder of this Addendum will remain legal, valid and enforceable according to its terms. In the event that the provision deemed illegal, invalid or unenforceable is of such a nature that it cannot be so adjusted, the provision shall be deemed deleted from this Addendum as though such provision had never been included herein.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the date first above written.

Dated: June 19, 2003          Advanced Materials Group, Inc., a Nevada corporation

By: _____
Steve Scott, President
("AMG")

Dated: June 23, 2003          Foamex Asia Co. Ltd., a private limited company
incorporated in the Kingdom of Thailand,

By: _____
Steve Scibelli, President
("Foamex")

7

Exhibit 7 to Mortensen Decl.
Page 7 of 8

FM 0039

CONSENT & ACKNOWLEDGMENT.

By the execution of this Addendum below, AMFS and Foamtec each hereby respectively consent and agree to, and acknowledge the validity of, the foregoing recitals and provisions insofar as they affect the undersigned.

Dated: June __19__, 2003

Advanced Materials Foreign Sales Corporation Ltd., a Bermuda corporation

By: _____

Steve Scott, President

("AMFS")

Dated: June __23__, 2003

Foamtec (Singapore) Pte. Ltd., a private limited company incorporated in the Republic of Singapore

By: _____

Steve Scibelli, President

("Foamtec")

8

Exhibit 7 to Mortensen Decl.
Page 8 of 8

FM 0040

Exhibit "7"

ADDENDUM DRAFT

To:      Steve Scott[sscott@advmatl.com];
Cc:      Steve Scibelli[spsjr@foamexasia.th.com]; Ratanesh Bal[ratanesh@straitslaw.com.sg]; Gayle
Arnold[garnold@advmatl.com]; Ed Sybesma[esybesma@rutan.com];
Subject:      ADDENDUM DRAFT
Sent:      Fri 6/6/2003 2:38:53 AM
From:      SLFOONG@

06 June 2003

Hi Steve,

RE: CHANGES TO JOINT-VENTURE

While we work on the terms of our new arrangement, though complex sometimes, I sincerely
believe that our friendship and sense of fairness will help us see it to completion.

Prior to receiving opinions from legal counsel, as I am going away for a week's break, and in
case I miss any communications (e-mails) while on the move, there are two things, and a few
suggestions/questions, I like to put on paper for easy reference.  Please let me know if I
misconstrued anything, or, please discuss/clarify with Steve Scibelli.

1. Legal status and standard descriptions to adhere to:
1.1:  Foamex Asia Co. Ltd., ("FAC") a private limited company incorporated in the Kingdom of
Thailand, the party to execute our agreement with AMG.
1.2:  Foamtec (Singapore) Pte. Ltd., ("FTS") a private limited company incorporated in the
Republic of Singapore, or may be described as a 'Singapore private limited company', a wholly
owned subsidiary of FAC and the entity that is carrying out the Business.
1.3:  The "Products" in our agreement mean "the finished product of PU Foam used in the inkjet
cartridge of HP" (as opposed to finished products of ALL TYPES in inkjet cartridges).
1.4:  The "Business" of both of us means 'the entire supply chain of the Products to HP
Singapore ("HPS") and Malaysia ("HPM"), and their contract manufacturers, wherever located in
Asia but linked back to the two agreed territories'.  Where does new area, "HPAsia", come in?

2. Key terms outstanding:
2.1:  The ADDENDUM applies to the "remainder" term of the Agreement (5 years left).
2.2:  (This one part was under discussion with Steve Scibelli when latest draft arrived).  His
intent was FAC shares profit with AMG as long as majority control as it exists in AMG today
stays.  FAC's obligations terminate on any of these occurrences: (A) loss of existing majority
control, (B) AMG is unable to carry on as a going concern, and (C) maturity of agreement's age.
2.3:  Identifying sales volume to HPS for the "Business" with AMG, at present, is a non-issue.

ADDENDUM DRAFT

Only in future, should HPS choose FTS as a single vendor, Steve Scibelli has agreed on a 50% share for AMG at the very least. I assume it is likely that HP sales may be gradual for another party FTS shares with.

How the mechanism works out, and the various implications, I think, are now being addressed in Article 16.6 in the ADDENDUM. In order to understand the drafted terms clearly, I would need your help to explain further, perhaps with a few simple examples.

I hope the above contents are clear and most of the outstanding issues are covered. Incidentally, I have to bug you on the machines. Circumstances may push FTS to acquire similar machines sooner from elsewhere and, thereafter, there will be constraints of cash and floor-space when AMG frees its machines too late. A firm indication from AMG in advance will be helpful to both of us.

Thank you & best regards,
SL FOONG.

**PROOF OF SERVICE**

I, the undersigned, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to this action. My business address is the Law Offices of George S. Burns, 4100 MacArthur Boulevard, Suite 305, Newport Beach, California 92660.

On March 11, 2009, I served a copy, including all exhibits, if any, of the following document(s):

**TRIAL TESTIMONY OF STEVE SCOTT**

on the parties in this action listed in the attached Proof of Service List, which is incorporated herein by this reference, by the following means:

X    **BY PERSONAL SERVICE)** I caused each such envelop to be sealed and given to a courier authorized by our attorney service to receive documents for delivery on the same date. A proof of service signed by the authorized courier will be filed forthwith.

X    **(BY ELECTRONIC SERVICE)** service deemed effective via the United States District Court Central District of California's Electronic Case Filing (CM/ECF) system

☐    **(BY FEDERAL EXPRESS)** I am readily familiar with the practice of the Law Offices of George S. Burns for the collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

X    **(DISTRICT)** I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on March 11, 2009, at Newport Beach, California.

Tammy Martin

9

1
2

SERVICE LIST
Advanced Materials Group, Inc. v. Foamtec and Foamex Asia
Case No.  SACV 08-43 JVS (RNBx)

3

4
5
6

Mr. Charles H. Kanter
Palmieri, Tyler, Wiener, Wilhelm &
Wladron LLP
2603 Main Street
East Tower, Suite 1300
Irvine, California 92614-4281

Attorneys for Defendants Foamtec
(Singapore) Pte. Ltd and Foamex
Asia Ltd.

7

8
9

Telephone: (949) 851-9400
Facsimile: (949) 757-1225
ckanter@ptwww.com
rgarretson@ptwww.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28