Charles H. Kanter, Bar No. 071410
ckanter@ptwww.com
Elise L. Enomoto, Bar No. 204075
eenomoto@ptwww.com
Erica M. Sorosky, Bar No. 251314
esorosky@ptwww.com
PALMIERI, TYLER, WIENER, WILHELM & WALDRON LLP
2603 Main Street
East Tower - Suite 1300
Irvine, California 92614-4281
Telephone: (949) 851-9400
Facsimile: (949) 757-1225

Attorneys for Defendants Foamtec (Singapore) Pte. Ltd. and Foamex Asia Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| Advanced Materials Group, Inc., a Nevada Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Foamtec (Singapore) Pte. Ltd., a private limited company incorporated in Singapore; and Foamex Asia Ltd, a private limited company incorporated in the Kingdom of Thailand and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. SACV08-00043 JVS (RNBx)<br><br>**DECLARATION OF STEVE SCOTT**<br><br>Trial Date: March 31, 2009<br>Time: 8:30 a.m.<br>Dept: 10-C |

## DECLARATION OF STEVE SCOTT

1. I, Steve Scott, declare that the following statements are true and correct to the best of my knowledge.

2. In 1998, I was the President of Advanced Materials Group, Inc., a Nevada corporation, and its wholly-owned subsidiary, Advanced Materials Foreign Sales Corporation Ltd., a Bermuda corporation (collectively, "AMG"). I was involved in negotiating the Manufacturing Agreement ("Agreement") made and entered into in January of 1998. I negotiated the Agreement with Steve Scibelli, who at that time was President of Foamex Asia Co., Ltd., a Thailand private limited company, and its wholly-owned subsidiary, Foamtec (Singapore) Pte, Ltd., a Singapore private limited company (collectively, "Foamex"). I signed the Agreement on behalf of AMG and Steve Scibelli signed the Agreement on behalf of Foamex.

3. In June of 2003, AMG and Foamex entered into an agreement entitled Addendum to Manufacturing Agreement ("Addendum"). In June of 2003, I was still the President of AMG and I signed the Addendum on behalf of AMG. Steve Scibelli signed the Addendum on behalf of Foamex.

4. As President of AMG and as the signer and principal negotiator of the Agreement and the Addendum, I know what foam product was included under the Agreement and the Addendum and I know the intent of the parties in this regard.

5. It was my understanding and intention, and based upon my negotiations with Steve Scibelli it was the intent of the parties, that the Addendum did not and was not intended to change or expand the product on which profits were to be calculated and divided between Foamex and AMG. The foam product on which profits were to be calculated and paid was the same in the Agreement as in the Addendum. In both agreements, the only product on which profits were calculated was the special type of foam used in the Hewlett Packard ink jet printer cartridge reservoir. This is further proven by the actual conduct of the parties. During the initial ten-year term of the Agreement, AMG manufactured and sold another product used in the Hewlett Packard

F:\LIT\1561\Foamtex - Advanced Materials Group\Pleadings\Steve Scott Declaration.doc



1 ink jet printer. It was a needlepoint felt which was used as part of the "spittoon" in the
2 Hewlett Packard ink jet printer. The issue of whether this product was included under
3 the Agreement came up in discussions with Foamex. Specifically, Steve Scibelli and I
4 discussed AMG's "direct sale" of the needlepoint felt product to Hewlett Packard in
5 Singapore, and we specifically agreed that this was not covered by the joint venture
6 Agreement. In fact, AMG had its own seller, Jim Sierra, who called on Hewlett Packard
7 and sold products (other than the special foam used in the ink jet printer cartridges) to
8 Hewlett Packard at its various divisions. These other products were also not covered
9 under the Agreement.

10   6.   Based upon my negotiations regarding the Agreement and the Addendum
11 and based upon my discussions with Steve Scibelli and the course of conduct of the
12 parties during the initial ten-year term of the Agreement, the only product subject to the
13 Agreement was the special type of foam used in the Hewlett Packard ink jet printer
14 cartridge reservoir. No other products or materials were subject to or covered by the
15 Agreement. However, if Foamex were to sell this special type of ink jet printer foam to
16 a Hewlett Packard subcontractor and the subcontractor, in turn, resold this special foam
17 to Hewlett Packard, then, although we never specifically discussed the matter, I believe
18 the sale of this special foam to the subcontractor would be covered by the Agreement.

19   I declare under penalty of perjury under the laws of the State of California that the
20 foregoing is true and correct.
21   Executed this _6TH_ day of ___JANUARY___, 2009, at

24   Steve Scott

-2-