1 | Charles H. Kanter, Bar No. 071410
ckanter@ptwww.com
2 | Erica M. Sorosky, Bar No. 251314
esorosky@ptwww.com
3 | PALMIERI, TYLER, WIENER, WILHELM & WALDRON LLP
2603 Main Street
4 | East Tower - Suite 1300
Irvine, California 92614-4281
5 | Telephone: (949) 851-9400
Facsimile: (949) 757-1225
6
Attorneys for Defendants Foamtec (Singapore) Pte.
7 | Ltd. and Foamex Asia Ltd.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

11 | Advanced Materials Group, Inc., a Nevada ) Case No. SACV08-00043 JVS (RNBx)
Corporation, )
12 | ) **FINDINGS OF FACT AND**
Plaintiff, ) **CONCLUSIONS OF LAW**
13 | )
vs. ) Assigned for All Purposes To:
14 | ) Judge: Hon. James Selna
Foamtec (Singapore) Pte. Ltd., a private ) Dept: 10-C
15 | limited company incorporated in )
Singapore; and Foamex Asia Ltd, a ) Trial Date: April 24, 2009
16 | private limited company incorporated in )
the Kingdom of Thailand and DOES 1 )
17 | through 10, inclusive, )
)
18 | Defendants. )
)
19 |

20

21 |     Defendants Foamtec (Singapore) Pte. Ltd. and Foamex Asia Co. Ltd.

22 | (erroneously sued as Foamex Asia Ltd.) (collectively "Foamtec") submit the following

23 | Findings of Fact and Conclusions of Law pursuant to Local Rule 52-1.

24

25

26

27

28

Palmieri, Tyler, Wiener
Wilhelm & Waldron LLP
Attorneys at Law

# FINDINGS OF FACT

1.     In January of 1998, Advanced Materials Group, Inc.'s ("AMG") predecessor (Advanced Material Foreign Sales Corporation, Ltd.) entered into the Manufacturing Agreement ("Manufacturing Agreement") with Foamex Asia Co. Ltd's ("Foamtec") predecessor (Foamtec Singapore Pte. Ltd.) whereby they agreed to combine efforts to sell certain finished foam products to Hewlett Packard in Asia.

2.     In June of 2003, AMG and Foamtec entered into an agreement entitled Addendum to Manufacturing Agreement ("Addendum"). The Addendum did not and was not intended to change or expand the product on which profits were to be calculated and divided between Foamtec and AMG. The finished foam product on which profits were to be calculated and paid was the same in the Manufacturing Agreement as in the Addendum. At the time the Manufacturing Agreement was entered into and thereafter, it was the intent of the parties that the only product covered by the Manufacturing Agreement was the special ink jet foam used to hold and dispense ink in the Hewlett Packard ink jet printer cartridge reservoir.

3.     Similarly, the course of conduct of the parties during the initial ten-year term of the Manufacturing Agreement, establishes that the only product subject to the Manufacturing Agreement was the special ink jet foam used to hold and dispense ink in the Hewlett Packard ink jet printer cartridge reservoir. No other products or materials were subject to or covered by the Manufacturing Agreement or Addendum.

4.     The customers covered by the Manufacturing Agreement and the Addendum are those customers "approved unanimously by the parties from time to time on a case by case basis" as well as Hewlett Packard and "Affiliates" of Hewlett Packard. The only customer approved unanimously by the parties was Hewlett Packard. The term "Affiliates" is defined in the Manufacturing Agreement, in essence, as a company which Hewlett Packard has "the power to direct or cause the direction of the management and policies" of the company. The definition of "Affiliate" in the Manufacturing Agreement refers to subsidiaries of Hewlett Packard. Plaintiff has not

1   met their burden of proof as to the fact that any subcontractor of Hewlett Packard
2   (including Flextronics, Cal Comp, Technocom Systems, Kinpo, Jabil or Tech Group
3   Asia) were subsidiaries of Hewlett Packard or that Hewlett Packard had "the power to
4   direct or cause the direction of the management and policies" of such subcontractors.  In
5   sum, the only customer covered by the Manufacturing Agreement and the Addendum is
6   Hewlett Packard.  Independently owned companies that manufactured parts for Hewlett
7   Packard pursuant to Hewlett Packard specifications (including Flextronics, Cal Comp,
8   Technocom Systems, Kinpo, Jabil or Tech Group Asia) are not Affiliates as defined in
9   the Manufacturing Agreement and therefore are not covered by the Manufacturing
10  Agreement.

11      5.      The Manufacturing Agreement contained a provision that allowed Foamtec
12  to buy out the interest of AMG.  On May 30, 2007, Foamtec gave notice of its intent to
13  buy out AMG in writing by way of a letter from counsel for Foamtec.

14      6.      On June 29, 2007, pursuant to the buyout purchase price formula in the
15  Manufacturing Agreement, Foamtec mailed AMG a buyout check in the sum of
16  $168,577, the amount of AMG's projected income under the Manufacturing Agreement
17  for the balance of the Initial 10-year Term of the Manufacturing Agreement.

18      7.      There are two virtually identical signed Manufacturing Agreements.  One
19  is dated January 8, 1998, and the other is dated January 30, 1998.  Foamtec calculated
20  the buyout price paid to AMG using the January 8, 1998 date of the Manufacturing
21  Agreement, estimating income through January 8, 2008.  As articulated in Foamtec's
22  Motion for Summary Adjudication, in order to resolve this issue, Foamtec has paid
23  AMG, in addition to the buyout price already paid, the amount that AMG would have
24  received based on projected sales to Hewlett Packard for the period of time from
25  January 8 through January 30, 1998.  This sum of money is in the amount of $15,240
26  and was paid to counsel for AMG on or about March 17, 2009.  Therefore, all issues
27  relating to the two different dates of the Manufacturing Agreement (January 8 and
28  January 30, 1998) have been resolved.

# CONCLUSIONS OF LAW

1.    A contract must be interpreted to give effect to the parties' mutual intention as it existed at the time of contracting.  (Civ. Code, § 1649; Code Civ. Proc., § 1864; *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 842-843.) The conduct of the parties after execution of their contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions. (*Universal Sales Corp. v. California Press Mfg. Co.* (1942) 20 Cal. 2d 751, 761-762.) The intent of the parties at the time the Manufacturing Agreement was executed and, thereafter, the subsequent course of conduct of the parties establish that the only product subject to the Manufacturing Agreement is the finished ink jet foam product used to hold and dispense ink in the Hewlett Packard ink jet printer cartridge reservoir.

2.    The definition of the term "Affiliate" in the Manufacturing Agreement is clear and unambiguous.  Therefore, parol evidence is not necessary and not admissible to interpret the meaning of the term.  California Civil Code §§ 1638 and 1639; *Yoshida v. Liberty Mutual* (9th Cir. 1957).

3.    The issue surrounding the correct date of the Manufacturing Agreement was resolved prior to the date of trial, as Foamtec tendered a check to AMG for $15,240 – the amount that AMG would have received based on projected sales to Hewlett Packard for the period of time from January 8 through January 30, 1998.

Dated:  April 17, 2009

PALMIERI, TYLER, WIENER, WILHELM & WALDRON LLP


By:  _____
       Charles H. Kanter
       Erica M. Sorosky
       Attorneys for Defendants
       Foamtec (Singapore) Pte. Ltd. and
       Foamex Asia Ltd.

Palmieri, Tyler, Wiener
Wilhelm & Waldron LLP
Attorneys at Law

-4-                         FINDINGS OF FACT AND CONCLUSIONS OF
                                                          LAW

F:\LIT\596\Foamtec - Advanced Materials Group\Pleadings\TRIAL DOCS\Findings of Fact and Conclusions of Law.doc